**MIDDLE RIVER–SNAKE RIVER WATERSHED DISTRICT,**
Plaintiff,

v.

**DENNIS DREWES, INC., Appellant,**

**J.O.R. Engineering, Inc., Respondent.**

No. A04–825.

Court of Appeals of Minnesota.

Feb. 15, 2005.

Zenas Baer, Zenas Baer and Associates, Hawley, MN, for appellant.

Stephen W. Plambeck (pro hac vice), Jacqueline S. Anderson, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, ND, for respondent.

Considered and decided by
KALITOWSKI, Presiding Judge;
LANSING, Judge; and WRIGHT, Judge.

## OPINION

LANSING, Judge.

In this dispute over the construction of a floodwater impoundment system, the contractor challenges two district court orders: its grant of summary judgment dismissing a counterclaim against the project engineer and its decision to cap damages. Because we find no error in the district court's dismissal of the contractor's counterclaim for failure to serve an expert-identification affidavit as required by Minn.Stat. § 544.42, subds. 2 and 4 (2004), we do not reach the damages issue, and we affirm.

## FACTS

Middle River–Snake River Watershed District contracted with Dennis Drewes, Inc., to work on the Angus Oslo flood-impoundment project. After submitting its initial bid, Drewes inspected the project site several times and examined soil reports accompanying the project proposal. These soil reports, prepared by Midwest Testing Laboratory, indicated that the soil was "moist" and therefore ideal for construction. At the time of bidding, the site appeared undisturbed by farm operations, and the contract did not refer to ongoing farming operations.

The contract, in compliance with statutory requirements, appoints a project engineer, J.O.R. Engineering, Inc., and describes the project engineer's role. J.O.R. is not, however, a party to the contract. The contract sets forth specifications for the work, provisions for changed conditions, and responsibilities of the parties. It requires the contractor to achieve an overall compaction of 95% and prohibits lifts greater than twelve inches in height.

The contract explicitly addresses the work alterations and changed site conditions that relate to this litigation. If the contractor discovers a materially different site condition that affects its work, the contract requires it to provide written notice to the engineer and the other party before performing the affected work, particularly if the contract adjustment requires additional compensation. After acknowledging that the engineer shall have the right to modify specifications as circumstances may require, the contract provides that "[i]n this event, ... no change shall be made that will ... increase the total cost by more than ten percent (10%) of the total contract price." The contract explains the engineer's authority and responsibilities, including its involvement in developing the plan's specifications and monitoring the site, but notes in several places that the engineer's review of the work and specifications does not relieve Drewes of its contractual obligations.

After beginning work on the project, two independent problems arose. First, the soil was wetter than anticipated. Second, a neighboring farmer, who had a lease with the watershed district, disked the project site. The combined effect of the disking and the wet soil made it more difficult to obtain the required compaction and caused Drewes to use lifts greater than twelve inches in height. Drewes, however, did not notify either J.O.R. or the watershed district of the changed conditions before working on the affected areas.

Upon discovering that neither the compaction nor the lift heights complied with the contract's specifications, the watershed

district filed a declaratory action to determine the rights and responsibilities of the parties under the contract. In its answer to the complaint, Drewes asserted multiple counterclaims against the watershed district. Drewes also impleaded J.O.R. as an "additional defendant on the counterclaim," alleging three causes of action: negligence, estoppel, and tortious interference with its contract. The watershed district moved for summary judgment on Drewes' counterclaims. J.O.R. also moved for summary judgment because, among other reasons, Drewes failed to serve a mandatory expert-identification affidavit.

The district court initially denied J.O.R.'s and the watershed district's summary-judgment motions, but the motions were twice renewed. In the first renewal, the watershed district grouped them with a motion in limine to cap damages. The district court granted the motion to cap damages but again denied summary judgment against Drewes. Shortly before the second renewal, Drewes and the watershed district resolved their "respective claims against each other" and stipulated to dismissal. The stipulation preserved Drewes' claim against J.O.R. Following the second renewal, initiated by J.O.R., the district court granted summary judgment for J.O.R. for three reasons: (1) Drewes failed to comply with the expert-witness disclosure requirements in Minn.Stat. § 544.42 (2004); (2) J.O.R. owed no duty to Drewes; and (3) the alleged breach did not proximately cause the harm suffered.

The district court's summary-judgment order, in addition to dismissing Drewes' negligence "counterclaim" against J.O.R., also dismissed Drewes' claim for estoppel and intentional interference with contractual relations. Drewes appeals from that part of the summary judgment dismissing his negligence claim against J.O.R. and also appeals the district court's earlier order that capped the amount of damages that could be recovered.

## ISSUES

I. Did the district court err in dismissing the contractor's negligence claim against the project engineer for failure to serve an expert-identification affidavit within 180 days after initiating the professional-malpractice claim?

II. Did the district court err in granting summary judgment because it concluded the engineer owed no duty to the contractor?

## ANALYSIS

On appeal from summary judgment, we consider whether genuine issues of material fact exist and whether the district court erred in its application of the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). This consideration views the evidence in the light most favorable to the nonmoving party and resolves any doubts on the existence of a material-fact issue against the moving party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I

The interpretation of a statute is a question of law that we review de novo. *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 375 (Minn.1996). When applying a statute, courts must give effect to its plain meaning, which takes into account the structure of the statute and the language of the specific statutory provision in the context of the statute as a whole. *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn.1989) (reasoning that sections of statute must be read together to give words their plain meaning); *see also United States v. Jennings,* 323 F.3d 263, 274–75 (4th Cir.2003) (determining

meaning by reference to language itself, specific context in which language is used, and broader context of statute as whole). We presume that plain and unambiguous statutory language manifests legislative intent. *Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967). Courts refrain from construing statutory provisions that convey a plain meaning "in order to preserve language as an effective medium of communication from legislatures to courts." *Krzalic v. Republic Title Co.*, 314 F.3d 875, 879 (7th Cir.2002).

■ Negligence actions against professionals, including engineers, must comply with the disclosure requirements in Minn. Stat. § 544.42, subd. 2 (2004). Subject to exceptions that do not apply here, the expert-witness disclosure requirements provide for service of two affidavits on the adverse party. *Id.* Generally, a party must serve the first affidavit, an affidavit of expert review, with the pleadings. Minn.Stat. § 544.42, subds. 2(1), 3 (2004). Within 180 days after the first affidavit, the party must serve a second affidavit, the expert-identification affidavit, which identifies the expert witnesses and provides the substance of the experts' opinions together with a summary of the grounds for each opinion. *Id.*, subds. 2(2), 4 (2004). Only the second affidavit is at issue in this litigation.

A party's failure to provide the second affidavit "results, upon motion, in mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case." *Id.*, subd. 6 (2004). The mandatory-dismissal subdivision provides that a motion to dismiss "based upon claimed deficiencies of the affidavit ... shall not be granted unless, after notice by the court, the nonmoving party is given 60 days to satisfy the disclosure requirements." *Id.*

It is undisputed that Drewes served the expert-review affidavit, but failed to serve the expert-identification affidavit within the following 180 days. J.O.R. filed its motion to dismiss for noncompliance with the expert-identification requirements, and Drewes filed the missing affidavit three days later. Drewes contends that filing the missing affidavit within 60 days after the motion to dismiss exempts it from the mandatory-dismissal provision and that the district court erred in determining that the 60–day cure period did not apply. No Minnesota appellate court has addressed this precise issue.

The disputed statutory provision prescribes a penalty for failure to serve the expert-identification affidavit within the required time period:

Failure to comply ... results, upon motion, in mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case, provided that an initial motion to dismiss an action under this paragraph based upon claimed deficiencies of the affidavit ... shall not be granted unless, after notice by the court, the nonmoving party is given 60 days to satisfy the disclosure requirements.... In providing its notice, the court shall issue specific findings as to the deficiencies of the affidavit....

Minn.Stat. § 544.42, subd. 6(c).

For three reasons we agree with the district court's determination that the plain meaning of subdivision 6(c) requires dismissal of Drewes' professional-malpractice claim against J.O.R.

First, the exception to mandatory dismissal that Drewes claims as a safe harbor allows 60 days to satisfy the disclosure requirement but only in response to a motion "based upon claimed deficiencies of the affidavit." When no expert-identification affidavit has been filed, the motion is simply to dismiss, not to compel the errant

party to cure claimed deficiencies in the affidavit's contents. . *See* Minn.Stat. § 645.19 (2004) (supplying statutory construction canon that states, "[p]rovisos shall be construed to limit rather than to extend the operation of the clauses to which they refer").

Second, courts must presume that the legislature intends to give effect to all provisions of a statute, Minn.Stat. § 645.17(2) (2004), and must construe every law, if possible, to give effect to all of its provisions. Minn.Stat. § 645.16 (2004). To apply a general 60–day extension whether or not an affidavit is filed would invalidate part of subdivision 6(c)'s operative language and eviscerate the effect of the mandatory-dismissal provision.

Third, a general 60–day extension, whether or not an expert-identification affidavit was initially filed, could not be reconciled with the last sentence of subdivision 6(c) that requires the court to issue specific findings on "the deficiencies of the affidavit." When an initial expert-identification affidavit has not been filed, a court would be unable to make specific findings on the deficiencies.

A Minnesota federal district court reached the same conclusion in addressing this issue, and its reasoning is instructive. In *House v. Kelbel,* the court considered whether a party was entitled to the 60–day cure period. *House v. Kelbel,* 105 F.Supp.2d 1045, 1050–51 (D.Minn.2000). It concluded that the party could not benefit from the cure period because the initial motion to dismiss did not arise from claimed deficiencies in the affidavit but rather from the failure to serve any affidavit at all. *Id.* The court noted that an alternative ruling would give a party 240 days to file the affidavit instead of 180. *Id.* at 1051. The court reasoned that "[t]he additional 60 days are provided for the purpose of avoiding harsh consequences arising from inadvertent drafting errors of which a party might otherwise be unaware, and is available only when an [a]ffidavit is in fact filed within 180 days." *Id.*

This analysis parallels the reasoning used in construing Minn.Stat. § 145.682 (2004), which provides for similar expert-disclosure affidavits for medical-malpractice actions. Under this statute, clear procedural violations result in mandatory dismissal. *See House,* 105 F.Supp.2d at 1052–53 (analyzing and comparing Minn. Stat. § 145.682). The supreme court, in construing section 145.682, reasoned that "[t]he statute provides for no ... exception and it is not for the courts to read into a clear statutory scheme something that plainly is not there." *Lindberg v. Health Partners, Inc.,* 599 N.W.2d 572, 578 (Minn. 1999). In a recent case applying section 145.682, the supreme court reaffirmed the necessity for strict adherence to procedural requirements for expert disclosure. *See Broehm v. Mayo Clinic Rochester,* 690 N.W.2d 721, 726 (Minn.2005) (stating that plaintiff's failure to strictly comply with expert-disclosure procedure requires dismissal with prejudice). The court observed that failure to strictly adhere to the requirements of expert review and disclosure undermines the legislature's procedural reforms in professional-malpractice actions and might ultimately require more intrusive or elaborate measures to avoid frivolous litigation. *Id.* These reasons for strict compliance apply equally to malpractice actions against other professionals.

▮▮▮▮ At oral argument Drewes introduced a new contention—that dismissal was improper because the statute requires service of the affidavit only when expert testimony is necessary to establish a prima facie case of negligence, and its case did not require expert testimony. This issue was neither timely presented in the district court nor briefed on appeal. *See Dep't of Labor & Indus. v. Wintz Parcel*

*Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn. 1997) (determining that issue was not adequately briefed on appeal); *Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988) (refusing to resolve issue not raised in district court). Furthermore, Drewes' claim is undisputably a claim of malpractice against a professional engineer. A negligence action against an engineer generally requires expert testimony that "the care, skill, and diligence exercised ... was less than that normally possessed and exercised by members of that profession in good standing and that the damage sustained resulted from the variance." *City of Eveleth v. Ruble,* 302 Minn. 249, 254–55, 225 N.W.2d 521, 525 (1974). We discern no evident reason for an exemption from the general rule in this case. Under the plain meaning of the statute, dismissal is mandatory, and the district court did not err in dismissing Drewes' professional-malpractice claim against J.O.R.

## II

■ The district court relied on two additional reasons that provide a separate and independent basis for granting summary judgment: that as a matter of law, J.O.R. "neither breached any duty toward Drewes [n]or was the proximate cause of any alleged damages." Drewes challenges the district court's determination of no duty but has not challenged, in either its appellate brief or its reply brief, the district court's determination that, as a matter of law, J.O.R. did not proximately cause any of Drewes' alleged damages. Consequently Drewes has waived this issue on appeal. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). Even if Drewes could demonstrate a material fact issue on the scope of J.O.R.'s duty, Drewes' negligence claim would still fail for lack of proximate cause. *See Funchess v. Cecil Newman Corp.,* 632 N.W.2d 666, 672 (Minn.2001) ("A defendant in a negligence suit is entitled to summary judg-

ment when the record reflects a complete lack of proof on any of the four essential elements of the negligence claim.").

In addition to its appeal of the summary-judgment order, Drewes also challenges the district court's decision to cap damages at 10% of the contract price. Because we are satisfied that the district court did not err in granting summary judgment, we do not consider Drewes' challenge to the ordered damages cap.

## DECISION

In failing to file the required expert-identification affidavit within 180 days after initiating an action against J.O.R., Drewes deprived itself of the benefit of the statute's cure period. Dismissal of its negligence claim was therefore mandatory. Furthermore, Drewes has not demonstrated any error in the court's determination that, as a matter of law, J.O.R. did not proximately cause Drewes' damages. For these reasons we affirm the district court's grant of summary judgment.

**Affirmed.**