Lady Jayne FONTAINE f/k/a
Jayne Fraser, Appellant,

v.

Geraldine Carlen STEEN,
et al., Respondents.

No. A07–2327.

Court of Appeals of Minnesota.

Jan. 27, 2009.

Kenneth Hertz, Hertz Law Offices, P.A., Columbia Heights, MN, for appellant.

William L. Davidson, Paul C. Peterson, Lind, Jensen, Sullivan & Peterson, Minneapolis, MN, for respondents.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and JOHNSON, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the district court's grant of summary judgment and dismissal of her legal-malpractice claim against respondents and the district court's judgment in favor of respondents on their counterclaim for unpaid legal services. We affirm.

## FACTS

James Fraser initiated a marriage dissolution action against appellant Lady Jayne Fontaine (f/k/a Jayne Fraser) in 2000, and appellant hired respondents Geraldine Carlen Steen and the Beckman & Steen Law Firm to represent her. James Fraser's father, Gerald Fraser, had financed the marital home pursuant to a purported contract for deed. During the dissolution proceeding, Gerald Fraser served a notice of cancellation of the contract for deed. On October 9, 2000, respondent Steen, on appellant's behalf, moved the district court to join Gerald Fraser as a third-party respondent in the divorce action and to enjoin him from canceling the contract for deed. At a November 13, 2000 hearing, the district court granted the motion and enjoined Gerald Fraser from canceling the contract for deed.

During the November 13 hearing, appellant alleges that she told respondent Steen that she had accumulated sufficient funds and was able to pay the outstanding arrears owed to Gerald Fraser on the contract for deed but that respondent Steen ignored her and "[gave] me a look that indicated to me that I should not talk to her while she was before the Judge." Respondent Steen denies that appellant ever told her that she was prepared to cure the default and observes that, even if she had, because James Fraser was under a district court order to make the payments to his father on the home pending completion of the dissolution proceeding, it was tactically not advisable for appellant to cure the default in the midst of the dissolution proceeding.

In the afternoon of November 22, 2000, the day before Thanksgiving, Gerald Fraser's attorney sent a settlement offer via fax and U.S. Mail to respondent Steen's office. The offer did not state that it would expire or be withdrawn unless accepted by a certain time. On Friday, November 24, 2000, Gerald Fraser's attorney sent a letter withdrawing the offer via fax and U.S. Mail. According to respondent Steen, she did not see either communication until Monday, November 27, 2000, because she was out of the office at appointments on Wednesday afternoon and her office was then closed until Monday due to the Thanksgiving holiday. Respondent Steen states that, upon receiving the letters, she forwarded them to appellant and notes that, in a deposition, appellant admitted that she "may have" received the letters. Appellant asserts that the settlement offer was never communicated to her.

Respondents represented appellant until approximately the end of January 2001, at which time appellant retained new legal counsel for both the dissolution proceeding and the controversy with Gerald Fraser over the default on financing the home. On January 30, 2001, the district court agreed to reconsider its November 13 joinder and temporary-injunction decisions. On March 30, 2001, the district court reversed itself on these matters.

Appellant sought review of those district court decisions. Ultimately, this court affirmed. We determined that the district

court correctly ruled that it did not have authority to make Gerald Fraser a party to the marriage dissolution action for the purpose of enjoining him from canceling the contract for deed. But we remanded because we concluded that appellant was entitled to judicial review of her claim and that the contract for deed was actually an equitable mortgage that required foreclosure. *Fraser v. Fraser*, 642 N.W.2d 34, 40 (Minn.App.2002).

Appellant commenced this lawsuit in May 2006, alleging that the following conduct constituted legal malpractice: (1) attempting to join Gerald Fraser in the dissolution proceeding instead of filing a separate action; (2) disregarding appellant's willingness to pay Gerald Fraser the arrears on the contract for deed on the home; and (3) failing to promptly communicate Gerald Fraser's November 22, 2000 settlement offer. She claimed that, because of this malpractice, she incurred approximately $90,000 in litigation expenses. Appellant's pleading did not include an affidavit of expert review or an allegation that an expert was not necessary. Respondents denied appellant's allegations, counterclaimed for payment of outstanding legal bills, demanded that appellant comply with the expert disclosure requirements stated in Minn.Stat. § 544.42 (2006), and warned that, by statute, failure to comply with the expert-witness requirements could result in dismissal of appellant's action with prejudice. Despite the demand and warning regarding the expert, appellant still did not provide a timely affidavit of expert review, provide a list of experts who would testify at trial, or seek a waiver or modification of the requirements.

Both parties moved for summary judgment. The memorandum supporting appellant's motion addressed only the joinder issue; there was no mention of malpractice incident to her two settlement-related claims. Respondents addressed all three claims of malpractice in the memorandum supporting their motion, arguing that expert testimony was necessary to establish each claim and that failure to comply with expert-disclosure requirements required dismissal of appellant's lawsuit. Appellant replied to respondents' memorandum and argued that, because the court of appeals deemed the joinder of Gerald Fraser to be improper, an expert witness was not necessary to determine that it was malpractice. Appellant did not address why her two settlement-related bases for malpractice should be permitted to proceed without expert testimony. The district court granted respondents' motion and denied appellant's motion, holding that appellant's failure to provide an expert-review affidavit and an expert-identification affidavit to support her case required dismissal with prejudice.[1]

Respondents' counterclaim for unpaid legal fees proceeded to a bench trial. The district court found that appellant's failure to pay respondents' legal fees was a breach of contract, found that respondents established by a preponderance of the evidence that they were owed $6,953.85 for their services, and ordered judgment for respondents for that amount plus costs and the expense of collection. This appeal follows.

## ISSUES

I. Did the district court err when it determined that appellant could not estab-

1. Ultimately, appellant provided an expert-review affidavit. But this was filed with her memorandum opposing respondent's motion for summary judgment, several months after the 60–day statutory deadline for providing such an affidavit and was not considered by the district court.

lish a prima facie case of legal malpractice without expert testimony?

II. Did the district court abuse its discretion when it ordered appellant to pay unpaid legal fees?

## ANALYSIS

### I.

The first issue is whether the district court erred when it determined that appellant could not establish a prima facie case of legal malpractice without expert testimony. On an appeal from summary judgment, if there are no genuine issues of material fact, this court asks only whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Generally, whether a medical-malpractice claim requires expert testimony to establish a prima facie case is a question of law reviewed de novo on appeal. *Tousignant v. St. Louis County,* 615 N.W.2d 53, 58 (Minn. 2000). Although *Tousignant* does not explicitly refer to legal-malpractice actions, legal-malpractice actions are governed by a statute with provisions for expert review and witnesses that are nearly identical to expert-review provisions of the statute regarding medical malpractice. *Compare* Minn.Stat. § 544.42 *with* Minn.Stat. § 145.682 (2008). We have previously noted the similarity in professional malpractice proceedings. *See Middle River–Snake River Watershed Dist. v. Dennis Drewes, Inc.,* 692 N.W.2d 87, 91 (Minn. App.2005) (discussing parallel reasoning used in construing requirements of Minn. Stat. § 145.682 and Minn.Stat. § 544.42 in context of engineering-malpractice claim); *see also House v. Kelbel,* 105 F.Supp.2d 1045, 1051 (D.Minn.2000) (stating that the Minnesota legislature "used § 145.682 as a blueprint in drafting the language of § 544.42"). We conclude the same de novo review should be used in evaluating the need for an expert in legal-malpractice proceedings.

In reviewing the grant of summary judgment, this court considers factual questions in a light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Nonetheless, a party must resist summary judgment by presenting more than mere assertions. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn. 1997). This court will generally not consider matters not argued to and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). And issues not raised or argued in appellant's brief cannot be raised in a reply brief. *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990).

The statute governing professional, non-medical malpractice actions requires that in cases "where expert testimony is to be used ... to establish a prima facie case," a plaintiff serve two expert-witness disclosure affidavits on an adverse party. Minn. Stat. § 544.42, subd. 2. The first, an affidavit of expert review, must establish that an expert reviewed the case and reached the opinion that the defendant deviated from the applicable standard of care and that conduct caused plaintiff's injury. *Id.,* subds. 2(1), 3(a)(1). The second, the expert-identification affidavit, is to identify the expert witnesses and provide the substance of the experts' opinions and the bases for those opinions. *Id.,* subds. 2(2), 4(a). The affidavit of expert review must generally be served with the pleadings. *Id.,* subd. 2(1).

Failure to supply required affidavits *"results, upon motion, in mandatory dismissal of each cause of action with prejudice* as to which expert testimony is necessary to establish a prima facie case." *Id.,*

subd. 6(a), (b), (c) (emphasis added). Thus, if a claimant brings a malpractice action assuming that the malpractice is obvious and that an expert is unnecessary to make a prima facie case, the claimant risks dismissal if that assumption is wrong. To minimize that risk, the statute (1) allows 60 days to provide an affidavit after a demand; and (2) provides that the party bringing the action may apply for a waiver or modification of the affidavit requirements at the time the action is commenced and that the district court may determine that "good cause exists for not requiring the certification." *Id.,* subd. 3(c). Here, because appellant failed to provide any expert affidavits within 60 days after respondents' demand or seek such a waiver or modification, it is undisputed that, if any of appellant's claims require an expert to establish a prima facie case, her failure to supply the affidavits would require dismissal of those claims with prejudice. *See id.,* subd. 6(a). Thus, the threshold question is whether appellant's claims require expert testimony to establish a prima facie case of malpractice.

■ To recover in a legal-malpractice case, a plaintiff must establish (1) the existence of an attorney-client relationship; (2) attorney negligence or breach of contract; (3) that such acts were the proximate cause of damages; and (4) that but for the attorney's conduct, the claimant would have been successful in the prosecution of the action. *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.,* 711 N.W.2d 811, 816–17 (Minn.2006). If the plaintiff does not prove each element, the malpractice claim fails. *Id.* Expert testimony is generally required to establish both the standard of care and its breach. *Id.* at 817. Expert testimony also must demonstrate that the attorney's negligence was the proximate cause of damages.

*Walton v. Jones,* 286 N.W.2d 710, 715 (Minn.1979); *see also Thomas A. Foster & Assocs. v. Paulson,* 699 N.W.2d 1, 8 (Minn. App.2005) (stating that litigation of attorney-malpractice claim required expert testimony on "complicated issues of causation and damage").

As previously stated, the general rule requiring expert testimony, however, is subject to the prima facie case exception. The phrase "prima facie case" is defined as:

1. The establishment of a legally required rebuttable presumption. 2. A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.

*Black's Law Dictionary* 1228 (8th ed.2004) (citations omitted). The purpose of requiring the affidavit is to avoid frivolous claims against professionals whose work is easily subject to after-the-fact criticism. It is recognition of the reality that just because an attorney is unsuccessful does not mean the attorney committed malpractice. The affidavits assure the legal system that malpractice claims are meritorious.

■ The statutory requirement for an affidavit parallels the common-law requirement that expert testimony is necessary in malpractice cases unless "the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony." *Hill v. Okay Constr. Co.,* 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977). The exception is for the "rare" and "exceptional" case. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 191 (Minn. 1990). We also have observed that "whether expert testimony is required depends on the nature of the question to be decided by the trier of fact and on whether technical or specialized knowledge will assist the trier of fact." *Blatz v. Allina Health Sys.,* 622 N.W.2d 376, 388 (Minn. App.2001).

■ Appellant's principal malpractice claim—and the only claim she defended against summary judgment in the district court—relates to the improper joinder of Gerald Fraser in the marriage dissolution action. Appellant argues that expert testimony is not necessary to establish that respondent Steen's attempt to join Gerald Fraser was prima facie malpractice because this court's published opinion in this very case holds that the attempt to add Gerald Fraser as a party to the dissolution action to enjoin the cancellation of the contract for deed was not a "proper procedure." *Fraser*, 642 N.W.2d at 39.

We recognize that, in the course of earlier appellate litigation, this court reached that conclusion. However, that ruling is not tantamount to a conclusion that the initial effort by respondent Steen to join Gerald Fraser to the dissolution proceeding established a prima facie case of malpractice. To answer that malpractice question, we must determine whether, in 2000 (at at the time respondent Steen attempted to add Gerald Fraser as a party), the joinder-of-parties rules and the statute authorizing actions to enjoin contracts for deed were sufficiently clear to make the attempted joinder malpractice.

As observed in our 2002 opinion in this case, in 2000, when respondent Steen attempted to join Gerald Fraser, the joinder of secured creditors to dissolution proceedings could proceed if a timely objection was not made. *Id.* at 38. However, in that 2002 decision, we also observed that a special section of the Minnesota statutes requires that efforts to enjoin cancellation of a contract for deed be initiated in "an action arising under or in relation to a contract [for deed] ...." and that appellant's 2000 joinder effort in her dissolution proceeding was not adequately related to the contract for deed. *Id.* (citing Minn. Stat. § 559.211, subd. (1) (2000)). We also

noted that a freestanding-injunction action under Minn.Stat. § 559.211 could be maintained, but that an injunction action would only be available if there was a threat of an "immediate, irreparable injury," and that, in the context of the Fraser dissolution proceeding, there was presumably an opportunity to structure the financial terms of the dissolution to compensate appellant for her husband's default on the contract for deed. *Id.* at 39. As much as this court endeavors to state legal principles with clarity, the rule of the *Fraser* opinion has significant and unavoidable complexities, was not completely predictable, and was the product of our attempt to balance the flexibility allowed by caselaw and the court rules with the demands of a statute and the factors required to obtain an injunction.

With the benefit of hindsight, it appears at the time appellant initially sued Gerald Fraser, the prudent and conservative course of action may have been to seek simultaneously injunctive relief against Gerald, a declaratory judgment that the contract for deed was an equitable mortgage, and an order in the dissolution proceeding requiring that James Fraser immediately cure the default or provide assurance of resources to compensate appellant for any loss, and then schedule hearings on all matters for the same time. The alternative courses of action that an attorney must weigh in deciding whether, when, where, and whom to sue are significant. Certainly, the litigation decisions and the analysis and legal research that inform such decisions are affected by the capacity and willingness of a client to pay fees to explore alternatives. In addition, it is necessary to determine whether there is a standard for legal practice in the relevant subject-matter area. The alternatives may involve unavoidable legal risks. Suffice it to say, the malpractice determination is

not simple or easy for appellate judges to sort out with full briefing, let alone a jury or finder of fact without any expert opinion. At a minimum, in this area of the law, an appellate determination that litigation strategy was ineffective does not per se establish a prima facie case of legal malpractice.

We conclude the district court did not err in deciding that an expert was necessary to establish a prima facie case that respondents' efforts to join Gerald Fraser as a defendant in the dissolution action was legal malpractice and affirm dismissal of that malpractice claim by appellant.

■ As for appellant's two settlement-related malpractice claims, appellant did not defend them from summary judgment in the district court and presented no argument in her principal appellate brief related to them. Appellant only pressed these two points in her reply brief and at oral argument. Because this court does not consider matters not argued to and considered by the district court or issues not raised or argued in an appellant's principal brief, we do not consider the issues on appeal, and the district court's order with regard to those claims stands. *See Thiele*, 425 N.W.2d at 582; *McIntire*, 458 N.W.2d at 717 n. 2.

**II.**

■ The second issue is whether the district court abused its discretion when it ordered appellant to pay the legal fees billed by respondents. "Legal fees are determined by the contract between the attorney and the client. The appropriate measure for breach-of-contract damages is the amount that will place the nonbreaching party in the same position [it] would be in had the contract been performed." *Kellogg v. Woods*, 720 N.W.2d 845, 853 (Minn.App.2006). The district court has broad discretion in deter-

mining damages, and we do not reverse absent an abuse of discretion. *W. St. Paul Fed'n of Teachers v. Indep. Sch. Dist. No. 197*, 713 N.W.2d 366, 378 (Minn.App.2006). Indeed, a reviewing court will not disturb a damage award "unless its failure to do so would be shocking or would result in plain injustice." *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194, 199 (Minn.1986). "It is not within the province of [appellate courts] to determine issues of fact on appeal." *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966). A claim that is based on "mere assertion and not supported by any argument or authorities" is waived "unless prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn.App.1997) (quoting *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971)).

■ Appellant disagrees with the district court's findings of fact and conclusion that respondents are owed $6,953.85. The basis of appellant's disagreement is that she believes that respondents' bills were vague, that many of the billable hours were spent working on the flawed joinder motion, and that respondents had improperly quoted two different hourly rates. Appellant fails to cite any legal authority to support her position that the district court's findings and calculation of damages were an abuse of discretion.

The trial transcript and the district court's findings indicate that the district court considered the parties' retainer agreement, respondents' record of billable hours and hourly rate related to their representation of appellant, respondent Steen's testimony regarding the accuracy of the summary of hours worked for appellant, and appellant's testimony related to that representation. The district court found that respondents established by a

preponderance of the evidence that respondents provided legal services, that a proper amount ($6,953.85) was billed, and that respondents have not been paid for those services. That respondents expected a higher hourly rate to the extent their fees were paid by Gerald Fraser does not affect their bill to appellant. They only used the reduced hourly rate in calculating her statement. Appellant's dissatisfaction with the factual findings does not constitute a basis for this court to reverse the district court, and inspection of the record does not indicate obvious prejudicial error. Consequently, we conclude that appellant has not demonstrated that the district court's findings were an abuse of discretion.

## DECISION

We review de novo whether an expert is required in a legal-malpractice case and an adverse judicial ruling in a prior case does not per se establish a prima facie case of legal malpractice. We conclude that the district court did not err in determining that expert testimony was required to state a prima facie case that respondents committed legal malpractice by attempting to join Gerald Fraser to a pending marriage dissolution proceeding for the purpose of enjoining cancellation of a contract for deed. We further conclude that the district court did not abuse its discretion in ordering appellant to pay respondents $6,953.85 for legal services.

**Affirmed.**