*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2070**

State of Minnesota,
Respondent,

vs.

Randall Ferrell Decker,
Appellant.

**Filed August 3, 2015
Affirmed
Larkin, Judge**

Faribault County District Court
File No. 22-CR-12-508

Lori Swanson, Attorney General, Matthew G. Frank, Assistant Attorney General, St. Paul, Minnesota; and

Troy G. Timmerman, Faribault County Attorney, Blue Earth, Minnesota (for respondent)

Jon G. Sarff, Sarff Law Office, Shorewood, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges his convictions of six counts of first- and second-degree criminal sexual conduct, assigning error to the testimony of two of the state's witnesses

and arguing that the evidence was insufficient to sustain two of the convictions. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Randall Ferrell Decker with seven counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. The complaint alleged that Decker sexually abused his 15-year-old daughter, J.D., over a two-year period. The case was tried to a jury.

The state called several witnesses at trial, including the victim, J.D.; the victim's uncle, B.D., who is Decker's brother; and Debra Mosloski, a county human-services employee who interviewed J.D. regarding the abuse. J.D. testified that beginning in 2010, when she was 13 years old, Decker asked her to give him rubdowns and massages. Later, Decker asked J.D. to masturbate him and to perform oral sex on him. J.D. testified that she performed oral sex on Decker in his apartment, at her uncle's house, and in the sleeper compartment of a semi-truck that Decker parked at a local gas station.

J.D. estimated that, throughout 2010, she had sexual contact with Decker at least 20 times in the apartment or house and at least five times in the semi-truck. J.D. testified that the masturbation and oral sex continued in 2011. Although she could not say how many times the abuse occurred in 2011, she testified that it occurred at least ten times in the semi-truck. She also testified that it occurred in an apartment and at her mother's house. In early 2012, Decker asked J.D. for vaginal intercourse. J.D. testified that she had intercourse with Decker at an apartment, at her uncle's house, and twice in the semi-truck.

J.D. testified that on one occasion in August 2012, she went to her uncle's house to ask Decker for synthetic marijuana. Decker agreed to give her the drug on the condition that she return to the house later that night to "give him a leg massage." J.D. interpreted Decker's statement to mean that Decker wanted her to masturbate him or to have intercourse. J.D. returned to her uncle's house around midnight. She found Decker in bed with her baby sister next to him. J.D. got into the bed and began to provide Decker with the requested leg massage, which led to intercourse. While Decker had intercourse with J.D., her baby sister slept next to them in the bed. The next morning, J.D. felt "disgusted and exhausted." Three days later, J.D.'s mother observed her crying. J.D. disclosed Decker's sexual abuse to her mother, and her mother called human services and the police.

J.D.'s uncle, B.D., testified that on at least two occasions at his house, before August 3, 2012, he witnessed Decker take J.D. into a bedroom and close the door. On one occasion, the door was locked and the bedroom light was off. He testified that on another occasion, J.D. emerged from the bedroom and took a shower. During direct examination by the state, B.D. acknowledged that he has two prior convictions for criminal sexual conduct, which he committed against another niece. B.D. also admitted that he had sexual contact with J.D. prior to August 2012. B.D. testified that he was aware that J.D. reported the incident and later recanted. But B.D. clarified that "it actually happened." Decker did not object to B.D.'s testimony.

The human-services employee who interviewed J.D. provided testimony that tended to corroborate J.D.'s accusations.

3

The jury found Decker guilty of three counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. This appeal follows.

## DECISION

## I.

Decker makes three arguments for reversal based on B.D.'s testimony. Decker's first argument is that "the state's attorney simply told the jury that [B.D.] had been convicted of sexual criminal conduct in Minnesota on two occasions." B.D. admitted his two convictions during his direct examination by the state, and Decker did not object to that testimony.[1] Generally, an issue will not be considered if it is raised for the first time on appeal. *State v. Anderson*, 733 N.W.2d 128, 134 (Minn. 2007). Nevertheless, an appellate court may review an issue not raised in the district court if there was plain error affecting substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under this standard, we consider (1) whether there was an error, (2) whether such error was plain, and (3) whether it affected the defendant's substantial rights. *Id*. An error is plain if it is "clear" or "obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation omitted). "Usually this is shown if the error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). "The third prong, requiring that the error affect substantial rights, is satisfied if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. If the three plain-error factors are established, a court may exercise its discretion to correct the

---

[1] Decker claims that he objected to evidence regarding B.D.'s prior convictions during pretrial proceedings and therefore preserved the issue for appeal. The record does not support that claim.

4

error only if such error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 742.

Under Minnesota Rule of Evidence 609(a), "evidence that the witness has been convicted of a crime" can be admitted "[f]or the purpose of attacking the credibility of a witness" if the crime "was punishable by . . . imprisonment in excess of one year . . . and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." The supreme court has stated that "*any* felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011). The state may preemptively address issues regarding the credibility of its witnesses during direct examination. *See State v. McArthur*, 730 N.W.2d 44, 52 (Minn. 2007) (stating that "it would be unreasonable to require the state to ignore the credibility issues on direct examination and then repeatedly rebut attacks on witness credibility during redirect"). Under those principles, admission of B.D.'s testimony regarding his prior felony convictions was not clear or obvious error. Decker therefore is not entitled to relief under the plain-error standard of review.

Decker's second argument regarding B.D.'s testimony is based on Minn. Stat. § 609.347 (2010). Section 609.347 provides that "evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in subdivision 4." Minn. Stat. § 609.347, subd. 3. Decker argues that the state did not comply with the procedural requirements of section 609.347. *See State v. Wenthe*, ___

N.W.2d \_\_\_, \_\_\_, 2015 WL 3875366, at \*11 (Minn. June 24, 2015) (stating that "[t]he rape-shield law applies equally to evidence offered by the prosecution and the defense" and that the "[s]tate should not have introduced evidence indicating that [the victim] was sexually inexperienced and abstained from vaginal intercourse"). Specifically, Decker argues that "[t]he state did not disclose [B.D.'s] sexual assault of J.D. prior to the trial and the state made no effort to gain the court's approval or in camera review prior to informing the jury of [B.D.'s] history of sexual criminal conduct or his sexual assault of J.D." Decker did not raise those issues in district court, so we review for plain error.

As to the alleged nondisclosure, the state asserts that it disclosed B.D.'s sexual abuse of J.D. to Decker before trial. At oral argument, the state informed this court that B.D. admitted the abuse to the state the day before trial, that the state disclosed B.D.'s admission to Decker that day, that B.D. received a grant of immunity related to his admission, and that Decker therefore was not surprised by B.D.'s admission at trial.

On the one hand, the record does not document the state's reported pretrial disclosure of B.D.'s admission that he sexually abused J.D. On the other hand, the fact that Decker did not object to B.D.'s admission during trial suggests that the state disclosed the admission to Decker before trial. In sum, there is an unresolved factual dispute regarding whether the state failed to disclose B.D.'s admission to Decker before trial, which this court cannot resolve on appeal. *See Fontaine v. Steen*, 759 N.W.2d 672, 679 (Minn. App. 2009) (stating that "[i]t is not within the province of appellate courts to determine issues of fact on appeal" (quotation omitted)). Because we cannot determine that the state failed to disclose B.D.'s abuse of J.D. to Decker before trial, Decker has not

6

established an error under the first prong of the plain-error test, and he is not entitled to relief.

As to the state's failure to comply with the procedural requirements of section 609.347, the state argues that Decker opened the door to B.D.'s testimony that he sexually abused J.D. by arguing in his opening statement that J.D. previously recanted an allegation of sexual abuse against B.D. and by eliciting testimony about the recantation.

> Opening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible. The doctrine is essentially one of fairness and common sense, based on the proposition that one party should not have an unfair advantage and that the factfinder should not be presented with a misleading or distorted representation of reality.

*State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (citations and quotations omitted).

Because Decker attempted to attack J.D.'s credibility with evidence that she falsely accused B.D. of sexual abuse, the district court did not plainly err by allowing the state to present evidence that the accusation was true without analyzing, sua sponte, application of section 609.347. *See Wenthe*, 2015 WL 3875366, at *11 (noting that "the court of appeals concluded that the State's evidence of [the complaining witness's] sexual inexperience opened the door to . . . rebuttal evidence of her past sexual conduct" (quotation omitted)).

Decker's third argument is that B.D. testified that "J.D. had taken a shower after a closed door meeting with [Decker] at his home" and that he "was not allowed to explain this incident." Once again, Decker did not raise this issue in district court, so our review

7

is for plain error. However, Decker does not identify the legal basis for this assignment of error. Instead, Decker complains that the testimony was "intended to suggest that this was an occasion when [he] engaged in sexual criminal conduct with J.D.," and he argues that the testimony was "fabricated." In the absence of supporting legal authority or argument, we discern no obvious prejudicial error and deem the issue waived. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." (quotation omitted)), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

In sum, Decker has not established reversible error stemming from B.D.'s testimony.

## II.

Decker argues that "[t]he state denied [him] a fair trial and due process by introducing the testimony of a county employee, Debra Mosloski, who fabricated a false story to help the state cover over a material defect in the alleged victim's testimony." Essentially, Decker attacks Mosloski's credibility as a witness. "Assessing the credibility of a witness and the weight to be given a witness's testimony is exclusively the province of the jury." *State v. Mems*, 708 N.W.2d 526, 531 (Minn. 2006). "Inconsistencies or conflicts between one witness and another do not necessarily constitute false testimony or serve as a basis for reversal." *Id*. Decker had the opportunity to cross-examine Mosloski and to attack her credibility at trial. We defer to the jury's resulting credibility determination.

8

## III.

Decker argues that the state denied him "a fair trial and due process with respect to [counts] 9 and 10," but he does not offer legal argument or authority to support that argument. Instead, he summarily lists reasons why the state's evidence was unpersuasive. We liberally construe Decker's argument as a challenge to the sufficiency of the evidence to sustain his convictions on counts nine and ten of the complaint, which alleged second-degree criminal sexual conduct occurring between August 1, 2010, and December 31, 2010.

"A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if . . . the complainant is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant." Minn. Stat. § 609.343, subd. 1(b) (2010). Sexual contact includes "(i) the intentional touching by the actor of the complainant's intimate parts, or (ii) the touching by the complainant of the actor's, the complainant's, or another's intimate parts effected by a person in a position of authority, or by coercion." Minn. Stat. § 609.341, subd. 11 (2010).

An appellate court assesses the sufficiency of the evidence supporting a conviction by determining whether the legitimate inferences drawn from the evidence in the record would permit a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). This court's review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it

9

did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This is especially true when a determination of guilt depended mainly on the resolution of conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

J.D. testified that Decker made her engage in oral sex and masturbation numerous times in 2010. Decker argues that J.D. could "not identify any specific details or dates" of the alleged sexual contact in 2010, that he was out of the state or in jail during much of 2010, and that he did not drive a semi-truck in 2010, where some of the abuse reportedly occurred. Essentially, Decker challenges J.D.'s credibility. We assume the jury believed the state's witnesses—including J.D.—and disbelieved any evidence to the contrary. *See Moore*, 438 N.W.2d at 108. J.D.'s testimony was sufficient to establish multiple incidents of second-degree criminal sexual conduct in 2010. *See State v. Dufour*, 123 Minn. 451, 452, 143 N.W. 1126, 1126 (Minn. 1913) (stating that "in general it is not necessary to prove the commission of a crime on the precise day, or even year, laid in the indictment, except where the time is a material ingredient of the offense"); Minn. Stat. § 609.347, subd. 1 (stating that in a prosecution for criminal sexual conduct, "the testimony of a victim need not be corroborated"). Because the jury could reasonably

10

conclude that Decker was guilty of counts nine and ten of the complaint, we do not disturb the jury's verdict.

**Affirmed.**