# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-1950
_____

Everest Stables, Inc., a Minnesota corporation; Jeffrey Nielsen

*Plaintiffs - Appellants*

v.

Porter, Wright, Morris, & Arthur LLP; Christopher D. Cathey

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 19, 2026
Filed: May 14, 2026
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Everest Stables, Inc. ("Everest") and Jeffrey Nielsen filed this lawsuit against Porter, Wright, Morris & Arthur LLP ("Porter Wright") and Christopher Cathey based on their alleged mishandling of three legal malpractice cases. Porter Wright

counterclaimed to recover unpaid fees. The district court[1] dismissed all claims against Porter Wright and Cathey. The district court[2] then granted Everest and Nielsen's motion for summary judgment on the counterclaims. Everest and Nielsen appeal the dismissal of their claims. We affirm.

## I.    BACKGROUND

Everest is a thoroughbred horse breeding and racing company with its principal place of business in Minnesota. Nielsen is the owner and Chief Executive Officer of Everest.

In 2008, Everest retained William Rambicure to draft a contract regarding the sale of equine assets and provide related legal advice. In 2009, Everest retained Foley & Mansfield, LLP ("Foley") for two lawsuits: one arising out of the 2008 contract regarding the sale of equine assets and the other against a horse trainer. In 2010, Nielsen retained Dorsey & Whitney, LLP ("Dorsey") to handle four lawsuits related to Nielsen's removal of election campaign signs. Everest and Nielsen were dissatisfied with the work performed by Rambicure, Foley, and Dorsey, so they hired Cathey, who worked for Porter Wright during the relevant time period, to pursue legal malpractice actions against them.

Nielsen signed an engagement letter with Porter Wright that covered the Dorsey and Foley lawsuits. The letter contained the following provision: "**Choice of Law**. The relationship between the Client and the Firm, including the validity, construction, and enforceability of this engagement letter, shall be governed in all respects by the law and professional conduct rules of the State of Ohio, without regard to conflicts of laws principles." Everest retained Cathey for the Rambicure

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, now retired.

[2]The Honorable Jerry W. Blackwell, United States District Judge for the District of Minnesota.

lawsuit shortly before Cathey started working for Porter Wright, and his previous law firm's engagement letter contained no choice-of-law clause.

On July 1, 2015, Everest commenced suit in the Western District of Kentucky against Rambicure, two law firms he worked for during the relevant time period, and a malpractice insurance company. Everest alleged Rambicure committed malpractice by (1) failing to include a fiduciary duty provision in Everest's contract with the broker, (2) advising Everest that the contract imposed fiduciary duties on the broker when it did not, and (3) advising Everest that it could set reserve bids on auctions for its horses and not pay a commission to the broker if the reserve was not met. On June 6, 2018, the district court granted Rambicure's motion for summary judgment on the grounds that there was no proof that Rambicure's drafting of the contract or his legal advice caused Everest harm. Everest appealed to the Sixth Circuit, and, after completing briefing for the appeal, Porter Wright withdrew from representing Everest on May 15, 2019.

On October 27, 2016, Nielsen commenced suit in Minnesota state court against Dorsey and two of its attorneys. Nielsen alleged Dorsey's malpractice included filing "groundless" claims, failing to manage one of the lawsuits "with prompt diligence and in an expeditious manner," and failing to advise him of some potential consequences of litigation. On February 4, 2019, Dorsey filed a motion for summary judgment. On April 30, 2019, Porter Wright withdrew from representing Nielsen. On October 18, 2019, the state court granted summary judgment in part. As alleged in the complaint, the court determined Nielsen's claims "were barred by the repeated failures and deficiencies of the expert affidavit" required by Minnesota Statutes section 544.42 for legal malpractice claims.

On or about August 1, 2017, Everest commenced suit in Minnesota state court against Foley and one of its attorneys. Everest alleged Foley's malpractice included failing to manage litigation in a "competent" manner, failing to secure and disclose required expert testimony, and failing to conduct "necessary" discovery. On March 6, 2019, Foley filed a motion to dismiss based on alleged deficiencies in the section

544.42 expert disclosure affidavit.  On April 25, 2019, Porter Wright withdrew from representing Everest.  As alleged in the complaint, this withdrawal "caused Everest harm" because it was forced to seek new counsel while a "critical" motion was pending.

On October 15, 2021, Everest and Nielsen filed the current legal malpractice action against Porter Wright and Cathey in the District of Minnesota by invoking the court's diversity jurisdiction.  As required by Minnesota Statutes section 544.42, subdivisions 2(1) and 3, three days after filing the complaint, their counsel filed an affidavit of expert review.  The expert disclosure affidavit, described in section 544.42, subdivision 4, was never served.

The district court dismissed the malpractice, breach of contract, and breach of fiduciary duty claims on the Foley and Dorsey matters as barred by the applicable statute of limitations.  The district court later resolved the remaining claims in favor of Porter Wright and Cathey on the ground that Everest and Nielsen failed to serve an expert disclosure affidavit.

## II.    DISCUSSION

### A.    Statute of Limitations

A district court may grant a motion to dismiss claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground of a statute of limitations defense if "the complaint itself establishes the defense." Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (citations omitted).  We review a district court's grant of a motion to dismiss *de novo*. Whitney v. Guys, Inc., 700 F.3d 1118, 1123 (8th Cir. 2012).  *De novo* review extends to the choice-of-law analysis underlying the decision. Id.

-4-

### 1.    *Choice of Law*

Everest and Nielsen assert that Minnesota's six-year statute of limitations should apply. Minn. Stat. § 541.05, subd. 1(5). Porter Wright asserts, and the district court agreed, that Ohio's one-year statute of limitations applies. Ohio Rev. Code § 2305.11(A). To determine which state's substantive law applies, we generally refer to the forum state's choice-of-law rules. Whitney, 700 F.3d at 1123.

Before performing a choice-of-law analysis, Minnesota law requires determining whether a conflict exists between the laws of the two states. Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co., 604 N.W.2d 91, 93-94 (Minn. 2000). A conflict exists if the application of one state's "law over the other will determine the outcome of the case." Id. at 94. It is undisputed that if Minnesota's six-year limitation period applied, the claims would have been timely filed.

Under Minnesota's choice-of-law rules, the parties' contractual choice-of-law provision will generally control the decision on which state's law applies. St. Jude Med. S.C., Inc. v. Biosense Webster, Inc., 818 F.3d 785, 788 (8th Cir. 2016) (citations omitted). In this case, the parties' agreement regarding representation for the Foley and Dorsey cases contained a choice-of-law provision stating that Ohio law applied.

Everest and Nielsen seek to avoid this clause of their agreement with Porter Wright through an exception provided by Minnesota's Uniform Conflict of Laws—Limitations Act. If the court determines that Ohio's limitation period is "substantially different" from Minnesota's limitation period and "has not afforded a fair opportunity to sue upon . . . the claim," then it may apply Minnesota's limitation period. Minn. Stat. § 541.33. The comment to this uniform law explains that it "should rarely be employed" and applies only "in extreme cases." Uniform Conflict of Laws—Limitations Act § 4 cmt. (2025).

Examples of the use of the unfairness exception include a property loss claim from a fire involving two insurance companies required to perform investigations and claims processing and when a state tolls the limitation period due to "defendant's physical absence from the state even though he is at all times subject to service under a longarm statute." Am. Gen. Fire & Cas. v. Wal-Mart Stores, Inc., 791 F. Supp. 763, 766 (W.D. Ark. 1992); Uniform Conflict of Laws—Limitations Act § 3 cmt. (2025). Everest and Nielsen contend their lack of a fair opportunity to sue was that they had not exhausted all possible appeals at the time their claims accrued. The potential for appellate review of the underlying cases is not a barrier to one's ability to pursue a separate claim for malpractice.

Everest and Nielsen failed to present a reason why it would be unfair to apply Ohio's statute of limitations to the Foley and Dorsey claims. Because this is not the rare or extreme case required to substitute Minnesota's statute of limitations, we will enforce the parties' agreement and apply Ohio's statute of limitations.

### 2.  *Date the Claims Accrued*

An action for legal malpractice must be "commenced within one year after the cause of action accrued . . . ." Ohio Rev. Code § 2305.11(A). Claims, including breach of contract and breach of fiduciary duty, that are premised on the "manner in which the attorney represented the client" constitute an action for legal malpractice under section 2305.11. Muir v. Hadler Real Estate Mgmt. Co., 446 N.E.2d 820, 822 (Ohio Ct. App. 1982); cf. Hiscox Ins. Co. v. Warden Grier, LLP, 474 F. Supp. 3d 1004, 1008 (W.D. Mo. 2020) (stating that the law firm's alleged failure to adequately secure protected health information on its servers is not inherently a breach of a professional legal service). The cause of action accrues "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act . . . or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. Calfee, Halter & Griswold, 538 N.E.2d 398, 401 (Ohio 1989).

For the Dorsey case, the complaint alleges that Porter Wright stopped representing Nielsen on April 30, 2019, and that the state court granted, in part, Dorsey's motion for summary judgment on October 18, 2019. The complaint alleges Nielsen lost the motion for summary judgment because of "the repeated failures and deficiencies of the expert affidavit." As his counsel, it was Porter Wright's responsibility to hire an appropriate expert and ensure the testimony in the expert's affidavit met the legal requirements. Therefore, as of October 18, 2019, Nielsen discovered, or should have discovered, he was injured and that it was related to his attorney's act or non-act. Because this suit was filed more than a year later, the legal malpractice claims are barred by Ohio's statute of limitations.

For the Foley case, the complaint alleges Porter Wright withdrew from representing Everest on April 25, 2019. As Everest admits in the complaint, it knew it was injured by the withdrawal because a critical motion was pending and Foley filed additional critical motions shortly after the withdrawal. As this suit was filed more than a year after Porter Wright's withdrawal, the legal malpractice claims arising out of the Foley case are also barred by the statute of limitations.

Everest and Nielsen contend that they were not aware of their injuries, or could not have discovered their injuries, until after judgments were entered and all possible appeals were exhausted. Under Ohio law, a judicial decision adverse to the plaintiff is not required "to start the malpractice clock." Cain Ridge Beef Farm, LLC v. Stubbins, Watson, Bryan & Witucky, LPA, 232 N.E.3d 470, 479 (Ohio Ct. App. 2023). The plaintiff also does not have to be aware of the full extent of his injuries or exhaust all his appellate remedies before the statute of limitations commences. Zimmie, 538 N.E.2d at 402.

The complaint contains sufficient allegations to determine when Everest and Nielsen discovered they were injured because of Porter Wright's legal representation. These discovery dates occurred more than a year prior to the filing of this suit. The discovery dates are not extended through later, additionally adverse judicial rulings or the availability of appellate remedies. The legal malpractice

claims regarding the Dorsey and Foley cases are barred by Ohio's statute of limitations.

## B.    Expert Disclosure Affidavit

The district court resolved the remaining claims under section 544.42 of the Minnesota Statutes.  While titled a "motion to dismiss pursuant to Minn. Stat. § 544.42," and described similarly by the district court, Porter Wright did not rely on Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To resolve the section 544.42 issue, the district court necessarily considered matters outside the pleadings to determine whether Everest and Nielsen served Porter Wright with an expert disclosure affidavit, which means the motion had to be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(d).[3]

That the motion at issue should be treated as a motion for summary judgment under Rule 56 is further supported by the purpose of the Minnesota statute.  The expert disclosure affidavit requirement in section 544.42, subdivisions 2(2) and 4, is intended to dispose of frivolous actions that would not survive a motion for a directed verdict.  Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P., 732 N.W.2d 209, 218 (Minn. 2007).  The summary judgment standard "mirrors the standard for a directed verdict . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Therefore, the issues implicated by section 544.42 are properly analyzed under the summary judgment standard.

We review a district court's grant of summary judgment *de novo*. BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 893 (8th Cir. 2013) (quoting Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric., 643 F.3d 1142, 1146 (8th Cir. 2011)).  We will affirm if "there is no genuine dispute as to any

---

[3]Litigants are advised to label motions in accordance with the Federal Rules of Civil Procedure.  See Berk v. Choy, 607 U.S. 187, 197 (2026) ("[A] free-floating evidentiary requirement [cannot] serve as the basis for an early dismissal.").

material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

### 1.    *Disclosure Deadline*

In a legal malpractice action, the plaintiff must serve upon the defendant an expert disclosure affidavit within 180 days of commencement of discovery. Minn. Stat. § 544.42, subd. 2(2). The affidavit must identify each expert witness the plaintiff will call "at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Id., subd. 4. Answers to interrogatories that provide the required information also qualify as an expert disclosure affidavit. Id. The failure to comply with the expert disclosure requirement will result, "upon motion, in mandatory dismissal of each action with prejudice as to which expert testimony is necessary to establish a prima facie case . . . ." Id., subd. 6(c).

As to the malpractice claims regarding the Rambicure matter, it is undisputed that Everest neither served an expert disclosure affidavit nor provided comparable answers to interrogatories within 180 days of commencement of discovery. If expert discovery was necessary to establish a prima facie case of malpractice, then the claims were subject to mandatory dismissal with prejudice. Id.

For the Rambicure matter, the applicable state laws are either Kentucky or Minnesota. There is no conflict between the two states' laws regarding the elements of a prima facie case for legal malpractice. Both states require (1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) the acts were the proximate cause of the plaintiff's damages; and (4) but for the defendant's acts, the plaintiff would have prevailed in the underlying legal matter. Blue Water Corp. v. O'Toole, 336 N.W.2d 279, 281 (Minn. 1983); see Lawrence v. Bingham, Greenebaum, Doll, L.L.P., 567 S.W.3d 133, 138 (Ky. 2018) (listing three elements where the proximate cause element includes the requirement to prove that

but for the attorney's malfeasance, the plaintiff would have prevailed in the underlying legal matter).

The "but for" proximate cause element is often referred to as a "suit within a suit" or a "case within a case" analysis. Osbourne v. Keeney, 399 S.W.3d 1, 10 (Ky. 2012); Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 409 (Minn. 1994). The plaintiff must demonstrate that if the lawyer had not breached the standard of care, he would have achieved a more favorable outcome in the underlying case. Osbourne, 399 S.W.3d at 10; Rouse, 520 N.W.2d at 409 (quoting Wartnick v. Moss & Barnett, 490 N.W.2d 108, 113 (Minn. 1992)). The lawyer is entitled to any defense the defendant would have had in the original action. Osbourne, 399 S.W.3d at 10. Expert testimony is generally required to establish the applicable standard of care and any breach of or deviation from that standard. Blankenship v. Collier, 302 S.W.3d 665, 675 (Ky. 2010); Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 711 N.W.2d 811, 817 (Minn. 2006) (quoting Admiral Merchs, Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 266 (Minn. 1993)).

Everest contends that Porter Wright breached the standard of care in the Rambicure matter by failing to conduct discovery, failing to take depositions, failing to obtain or disclose "adequate" expert reports, and asserting "futile" claims. Everest quotes two sentences from the Western District of Kentucky opinion and one sentence from the Sixth Circuit opinion to assert that these are sufficient to conclusively establish Porter Wright's failure to disclose adequate expert reports constitutes malpractice. They are not.

In the Rambicure litigation, Porter Wright submitted an expert disclosure affidavit that described the amount of the alleged damages and the basis for those opinions. Everest Stables, Inc. v. Rambicure, No. 3:15-cv-00576, 2018 WL 2725020, *7-9 (W.D. Ky. June 6, 2018). The flaws in the legal claims related not to the expert affidavit but to the underlying facts that could not establish a causal link between the asserted damages and Rambicure's conduct in representing Everest. See id. at *7, *8 (the addition of a fiduciary duty clause in the contract would not

-10-

have changed the result of the auction and the commission amount would have been the same in the absence of setting a reserve price).

Instead of supporting Everest's position that the Sixth Circuit opinion conclusively establishes Porter Wright's breach of the standard of care, it supports the conclusion that expert testimony is necessary for Everest's prima facie case of malpractice against Porter Wright. The Sixth Circuit posed the hypothetical that if the horse was worth $200,000, then Everest turning down the $875,000 bid would have injured Everest, but Everest would need to submit expert testimony on the horse's value to establish damages and causation. Everest Stables, Inc. v. Rambicure, 803 F. App'x 819, 823 (6th Cir. 2020). For Everest to establish its case within a case that Rambicure's legal advice regarding setting a reserve price caused it damages, Everest must submit expert testimony that the horse was worth less than the bid amount. Id.

Everest's assertions about discovery, depositions, and asserting futile claims deviating from the standard of care similarly require expert testimony because these are matters outside the general knowledge of a lay person. The need to conduct discovery, the scope of that discovery, and whether the case requires conducting depositions, along with many other discovery considerations, varies widely depending on the legal issues involved and strategic and practical considerations. Similarly, whether a claim is futile requires expert legal knowledge to evaluate.

Expert testimony is also required because of the complex causation questions raised by new counsel taking over the case after the Sixth Circuit remanded it to the district court. Everest Stables, Inc., 803 F. App'x at 826. An expert will have to separate out the conduct between the two law firms and explain how Everest would have obtained a more favorable outcome but for Porter Wright's alleged breaches prior to the involvement of the new law firm.

The alleged breaches of the standard of care that form the bases of Everest's malpractice claims against Porter Wright require expert testimony. Everest also

needs expert testimony to prove its case within a case that it would have had a more favorable outcome in the Rambicure matter. The district court properly dismissed the malpractice claims against Porter Wright and Cathey for the Rambicure matter due to the failure to serve an expert disclosure affidavit as required by section 544.42.

### 2. *Fraud*

The district court also disposed of the fraud claims related to the Dorsey, Foley, and Rambicure matters based on the failure to comply with section 544.42. The statute applies to "each cause of action" that requires expert testimony. Minn. Stat. § 544.42, subd. 6(a). Any legal claims, no matter how they are denominated, are subject to section 544.42 if they are based on the same facts supporting malpractice and arise solely out of the attorney-client relationship. Afremov v. Sulloway & Hollis, P.L.L.C., 922 F. Supp. 2d 800, 815 (D. Minn. 2013).

The fraud claims rely on the allegations that Cathey misrepresented that he had "sufficient experience" to handle the three underlying malpractice lawsuits and that Cathey misrepresented that he was complying with filing deadlines and obtaining the "necessary" experts. A fraud claim based on an attorney's representation about having the requisite skill to handle the matter requires expert testimony to establish whether the attorney's performance met the standard of care. Mosby v. Engh, No. A05-901, 2006 WL 4643133, at *5 (Minn. Ct. App. May 2, 2006) (unpublished). Similarly, the manner in which an attorney communicates with his client and what the attorney chooses to disclose are issues that implicate the standard of care. Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd., 783 N.W.2d 733, 739-40 (Minn. Ct. App. 2010); see Zirbes v. Meshbesher & Spence, Ltd., No. A16-0352, 2016 WL 5345653, *3 (Minn. Ct. App. Sept. 26, 2016) (unpublished) (failure to disclose the risk of a judgment for costs relates to standard of care, which is a subject requiring expert testimony). The facts underlying the fraud claims are derivative of legal malpractice, which makes them subject to section 544.42. Afremov, 922 F. Supp. 2d at 815.

Furthermore, Everest and Nielsen would need expert testimony to establish that any of these alleged misrepresentations caused them harm. A layperson would be unable to determine whether but for these alleged misrepresentations Everest and Nielsen would have obtained more favorable outcomes in the underlying lawsuits. See Schmitz, 783 N.W.2d at 741 (rejecting assertion that a jury could determine without expert testimony whether, but for the content of the attorney's communication, the underlying litigation would not have occurred).

As to the Dorsey and Foley matters, Everest and Nielsen assert that because many of the claims related to those cases had already been dismissed prior to the 180-day deadline, they should be excused from failing to serve the affidavit. Everest and Nielsen provide no authority for this proposition. Because the fraud claims are merely legal malpractice claims by another name, they require expert testimony as explained above.

The facts supporting the fraud claims are derivative of the legal malpractice claims. Everest and Nielsen would need expert testimony to establish the standard of care and causation related to establishing a claim for the alleged misrepresentations. The district court properly applied section 544.42 to resolve the fraud claims in favor of Porter Wright and Cathey.

Similarly, the district court did not err in dismissing the breach of contract and fiduciary duty claims. Because these claims were derivative of Everest and Nielsen's malpractice claims, the district court properly dismissed them along with the malpractice claims for failing either Ohio's one-year statute of limitations (as to the Dorsey and Foley matters) or Minnesota's expert disclosure affidavit requirement (as to the Rambicure matter).

III. CONCLUSION

We affirm the judgment of the district court.

_____